UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **KEITH F. BELL, Ph.D.** | : |
| | : Civil Action No. 2:18-cv-00399-NBF |
| **Plaintiff,** | : |
| v. | : Judge Nora Barry Fischer |
| | : |
| **MOON AREA SCHOOL DISTRICT** | : |
| **and RONALD LEDBETTER,** | : |
| | : |
| **Defendants.** | : |

**DEFENDANTS MOON AREA SCHOOL DISTRICT'S
AND RONALD MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS COUNTS II AND III OF THE COMPLAINT</u>**

Defendants, Moon Area School District ("MASD") and Ronald Ledbetter ("Ledbetter") (collectively, Defendants), by and through counsel, hereby file this Memorandum of Law in Support of Defendants' Motion to Dismiss Counts II and III of the Complaint filed by Plaintiff Keith F. Bell, Ph.D. ("Bell" or "Plaintiff").

## <u>INTRODUCTION</u>

Plaintiff has filed a three count complaint, based on the tenuous and absurd notion that Defendants have engaged in actionable copyright infringement, trademark infringement and/or unfair competition by retweeting without attribution an image (originally tweeted by a non-party, with whom neither Defendant has any familiarity, let alone affiliation) that, according to Plaintiff, contains text from Plaintiff's 1982 book, *Winning Isn't Normal*.

Defendants -- a public school district and its Athletic Director -- are not competitors of Plaintiff, who is a self-described "internationally recognized sports psychology and performance consultant" who "speaks at national and international coaching symposia", who has "enjoyed success as an athlete and coach," and who has "authored and had published 10 books and over 80

1

articles relating to sports psychology and sports performance." Defendants are, instead, engaged in the business of educating and motivating students in their District to achieve and excel.

Nevertheless, Plaintiff has filed suit, claiming violations of the Copyright Act, the Lanham Act, and common law trademark infringement and unfair competition under Pennsylvania law, and seeking damages purportedly inflicted by Defendants' retweet of an image that (according to the Complaint) was removed shortly after Plaintiff contacted the original Twitter poster ("Coach Mac") about the purported violation of Plaintiff's rights.[1]

None of Plaintiff's claims has merit. Moreover, two counts of the Complaint -- Count II (Lanham Act) and Count III (common law trademark infringement and unfair competition) -- fail as a matter of law and must be dismissed.

First, Plaintiff's claim for "unfair competition" under the Lanham Act is squarely foreclosed by the United States Supreme Court decision, *Dastar Corp. v. Twentieth Century Fox Film Corp*. As the *Dastar* Court held, and as its progeny have reaffirmed time and again, claims arising from the unauthorized use of copyrightable works are within the exclusive domain of the Copyright Act, and are not actionable under the Lanham Act. Likewise, Plaintiff's state law

---

[1] According to the Complaint, once the original poster removed the image of Plaintiff's allegedly copyrighted work, the image would be automatically removed from Defendants' own Twitter feed. This automatic removal is consistent with how the platform of Twitter.com represents that it operates, provided the retweeting twitter account does not add comment to the original tweet: *see https://help.twitter.com/en/using-twitter/delete-tweets* (last visited on July 31, 2018) ("What happens to Tweets I delete? … Retweets of the deleted Tweet will also be removed on twitter.com, Twitter for iOS, and Twitter for Android.").

It bears noting, however, that the Retweet was removed from Defendants' own Twitter feed nearly six months before "Coach Mac" removed the original tweet in late November of 2017. Specifically, Plaintiff sent a cease and desist letter **directly to Defendants** in late May of 2017 -- a fact that Plaintiff, strangely, does not mention in the Complaint. Immediately upon Defendants' receipt of that letter, Defendants removed the Retweet from Defendants' feed.

claims for trademark infringement and unfair competition fail because they are qualitatively equivalent to, and thus preempted by, the Copyright Act.

Moreover, no amendment to Plaintiff's Complaint can alter the content of the Plaintiff's book, the content of Defendants' allegedly infringing retweet, and, thus, the conclusion that both Count II and Count III are barred as a matter of law. As further set forth herein, pursuant to Fed. R. Civ. P. 12(b)(6), Counts II and III of the Complaint should be dismissed, with prejudice.

## STATEMENT OF FACTS

### I. PLAINTIFF'S WORK AND MARK

Plaintiff is a "sports psychology and performance consultant" and the author of a book entitled *Winning Isn't Normal* (the "Infringed Work"), first published in 1982. A copyright registration certificate for the Infringed Work was issued by the United States Copyright Office for the Infringed Work with the registration number TX-0002-6726-44 on or about September 21, 1989. (Complaint ¶¶ 14-15.)

According to the Complaint, Plaintiff promotes, distributes, offers for sale, and sells the Infringed Work on Amazon.com and the website keelpublications.com. (Complaint ¶ 16.) Plaintiff alleges that he makes efforts to "protect and enjoy the rights afforded to him under the Copyright Act" by, for example, "creat[ing], market[ing], and sell[ing] derivative works featuring Winning Isn't Normal, such as posters and t-shirts that display a portion of *Winning Isn't Normal*," which plaintiff alleges is viewed "as the heart of Dr. Bell's literary work." (Id. ¶¶ 17-18.)

Plaintiff alleges that he has "offered and continues to offer licenses at fair and reasonable rates to others who wish to publish or otherwise use the popular *Winning Isn't Normal* on the Internet or in traditional publishing mediums." (Complaint ¶ 22.)

Plaintiff also alleges that he "enjoys trademark protection in the word mark 'WINNING ISN'T NORMAL,' which he uses in connection with various goods and services." (Complaint ¶ 25.) A trademark registration was issued by the United States Patent and Trademark Office for the mark "WINNING ISN'T NORMAL" in connection with printed matter, with a registration number of 4630749 on or about November 4, 2014. (Id.)

Plaintiff alleges that his mark "has become widely associated with Dr. Bell's printed material and related goods and services" and that the mark is "indicative to consumers that printed materials bearing the WINNING ISN'T NORMAL mark originate from or are affiliated with, sponsored, or approved by Dr. Bell." (Complaint ¶ 27.)

## II. DEFENDANTS' ALLEGED INFRINGING CONDUCT

Defendants are the Moon Area School District ("MASD") and Ronald Ledbetter ("Ledbetter"), MASD's Athletic Director. Ledbetter is responsible for the management of the MASD athletic department's Twitter account, which uses the Twitter handle "@MoonTigersAD." (Complaint ¶¶ 28, 36.)

Plaintiff alleges that in January 2017, Defendants infringed Plaintiff's registered copyright in Plaintiff's book, *Winning Isn't Normal*, in copyright infringement by retweeting a "textual representation of page 8" of Plaintiff's book to the Twitter account of "@MoonTigersAD" (the "Retweet") "without authorization from Dr. Bell and without attribution to Dr. Bell". (Complaint ¶ 29). This Retweet is the sum total of Defendants' allegedly infringing actions.

The Retweet was a retweet of a post originated by another Twitter handle "@BballCoachMac", which account allegedly belongs to someone identified in the Complaint as

4

"Coach Mac", who Plaintiff alleges is also known as "Trevor McLean." (Complaint ¶ 33.) Neither defendant has any knowledge of or affiliation with "Coach Mac" or Mr. McLean.

As alleged in the Complaint, Plaintiff sent a cease and desist letter to Mr. McLean on an unspecified date, which email was "acknowledged by Mr. McLean on November 17, 2017." (Complaint ¶ 34.) According to Plaintiff, the post was removed "[s]hortly thereafter", which resulted in the automatic removal of all retweets (including Defendants' Retweet) of the post. (Id.) Plaintiff does not allege that Plaintiff contacted either MASD or Ledbetter regarding the Retweet.[2]

## ARGUMENT

### I. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Although allegations in the complaint must be taken as true, a court " 'is not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.' " *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678

---

[2] While not material to the disposition of this Motion, it bears noting that Defendants received a cease and desist letter from Plaintiff on or about May 25, 2017, and that Defendants removed the Retweet from Defendants' Twitter feed immediately upon receipt. As such, the Retweet had been from Defendants' Twitter feed nearly 6 months **before** Plaintiff alleges that "Coach Mac" removed his original tweet. Why the Complaint fails to note this fact is unclear.

5

(citing *Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 556-57; *Iqbal*, 556 U.S. at 678.

## II. COUNTS II AND III OF THE COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT AND COMMON LAW UNFAIR COMPETITION FAILS TO STATE A CLAIM

Plaintiff's claims for "unfair competition" and trademark infringement brought pursuant to both Section 32(1) the Lanham Act (Count II) and Pennsylvania common law (Count III) are premised on the generic, conclusory allegation that Defendants have "used Plaintiff's trademark in the Twitter post without the Plaintiff's knowledge or permission, and without attribution to Plaintiff", such that "some readers of the post are likely to be confused so as to infer that the text shown in the post was originated by either of the Defendants or by Coach Mac, rather than by Plaintiff." (Complaint ¶¶ 47, 49, 51, 56, 62, 63.) Pursuant to well-settled authority, neither cause of action is viable.

### A. Plaintiff's Lanham Act Claim Is Precluded by *Dastar*.

Count II, Plaintiff's federal trademark infringement claim pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114 is barred by the United States Supreme Court decision, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In *Dastar*, the Supreme Court rejected an attempt to assert a Section 43(a) Lanham Act claim arising from the distribution of copyrightable content without credit to the author.[3] The Court explained that the

---

[3] Under federal law, trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards. *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239, 244 (D. Del. 2004), citing *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir. 1999). Whether a violation of the Lanham Act is called trademark infringement, unfair competition, or false designation of origin, the test is identical, and asks whether there is a likelihood of consumer confusion. *See Slep-Tone Entertainment Corporation v. Wired for Sound Karaoke and DJ Services, LLC*, 845 F.3d 1246

Lanham Act, unlike the Copyright Act, was "*not* designed to protect originality or creativity" (*id.* at 37 (emphasis in original)) and that the Lanham Act does not afford a cause of action "for, in effect, plagiarism" to an "author of any idea, concept, or communication." *Id.* at 36-37.

Yet that is precisely the nature of Plaintiff's claim here. Plaintiff -- the alleged "author of ideas" -- contends that Defendants have copied (*i.e.*, plagiarized) Plaintiff's ideas without attribution, which act, according to plaintiff, resulted in confusion as to the origin of the ideas in the Retweet. This is not actionable under the Lanham Act, which protects the "producer or manufacturer of the goods" (here, Defendants, who "produced" the Retweet), rather than "the designer or creator of the idea." *See*, *e.g.*, *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 451 (E.D. Pa. 2015) (designer of interactive candy products was not the "producer" of the products, and thus could not assert a reverse passing off claim against the seller and its owner under the Lanham Act, where seller, rather than designer, manufactured the products).

Thus, Plaintiff's claim for trademark infringement pursuant to the Lanham Act is barred as a matter of law.

---

(9th Cir. 2017) (applying *Dastar* to § 1114(1) claim); *Phoenix Entertainment Partners v. Rumsey*, 829 F.3d 817 (7th Cir. 2016) (consumer confusion resulting from pub's playing unauthorized digital copies of producer's karaoke tracks did not involve passing off tangible good sold in marketplace, as would support trademark infringement and unfair competition claims under the Lanham Act, § 1114 or § 1125; pub was not in business of selling copies of karaoke tracks, pub patrons did not see digital files or medium on which they resided, and thus had no reason to believe plaintiff was sponsoring performance of copied karaoke tracks, or that copied digital files were produced or approved by producer).

## B. **Both Plaintiff's Lanham Act Claim and Common Law Trademark Infringement and Unfair Competition Claims Are Preempted by the Copyright Act.**

Moreover, both Plaintiff's Lanham Act claim (Count II) and common law trademark infringement and unfair competition claim (Count III) are preempted by Section 301 of the Copyright Act.

The Copyright Act preempts rights under common law or state statutes that "are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). In order for a claim to be preempted, "the Defendant must demonstrate that (1) the work in question falls within the type of works protected by the Copyright Act; and (2) the state law seeks to enforce rights that are equivalent to any of the exclusive rights of copyright found in Section 106 of the Copyright Act." *See, e.g. Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 216-17 (3d Cir 2002); *see also Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 420-421 (W.D. Pa. 2008) (Fischer, J.); *FedEx Ground Package Sys. v. Applications Int'l Corp.*, Civ. A. No. 03-1512, 2005 WL 2921633 (W.D. Pa. Nov. 4, 2005). The exclusive rights provided by the Copyright Act include, among others, the right to distribute, reproduce, and display a work, as well as the right to produce derivative works. 17 U.S.C. § 106.

The United States Supreme Court has extended this principle of copyright preemption to the Lanham Act and federal trademark protection. *Lions Gate Entertainment, Inc. v. TD Ameritrade Servs.*, 170 F. Supp. 3d 1249, 1265 (C.D. Cal. 2016) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-38 (2003)).

To determine whether a claim is either functionally equivalent to or qualitatively different from a right protected by the Copyright Act, the Third Circuit has adopted the "extra element"

test. *Dun & Bradstreet*, 307 F.3d at 217-18. If a cause of action requires proof of an "extra element" beyond reproduction, distribution, display, or preparation of derivative works, then "the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action. *Id.* at 217.

Notably, "[n]ot every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law." *Id*. Courts take a "restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Nicassio v. Viacom International, Inc.*, 309 F.Supp. 3d 381, 396–97 (W.D. Pa. 2018) (Fischer, J.) (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).

Here, there is no extra element that has been (or could be) pleaded in Plaintiff's Complaint so as to rescue his Lanham Act or common law claims. Plaintiff's claims are premised entirely on a single act: Defendants' allegedly unauthorized copying of elements of Plaintiff's creative work and claiming it as Defendants' own -- *i.e.*, reverse passing off[4] -- via a Retweet. Plaintiff's right to seek protection from such unauthorized copying is a right singularly governed by and subsumed within the exclusive rights granted by the Copyright Act. As such, both Plaintiff's Lanham Act claim (Count II) and Plaintiff's common law trademark and unfair competition claims (Count III) are preempted by the Act. *See*, *e.g.*, *Quadratec, Inc. v. Turn 5, Inc.*, 2015 WL 4876314, at *8, 12 (E.D. Pa. 2015) (Lanham Act claims were preempted by Copyright Act claims, where plaintiff alleged that defendant had "falsely branded" plaintiff's image and claimed it as its own, and that defendant's unauthorized use of plaintiff's "Product

---

[4] *See Daley v. Firetree, Ltd.*, 2006 WL 148879, *4 (M.D. Pa. 2006) ("reverse passing off" occurs when "A" copies "B's" work without permission and claims it as "A's" own).

9

Presentations, proprietary photographs, and original text of plaintiff, to sell products in direct competition with Plaintiff" was "likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection or association of [defendant] with [plaintiff], or as to the origin of [defendant's] goods and services, or as to the sponsorship or approval of [defendant's] goods and services, or as to the sponsorship or approval of [plaintiff's] goods and services or commercial activities by [defendant]"); *Nicassio*, 309 F. Supp. 3d at 397 (plaintiff's unfair competition claim consisted of allegations of "reverse passing off" and was therefore preempted by Section 301 of the Copyright Act); *Kitchen & Bath Concepts of Pittsburgh, LLC v. Eddy Homes, Inc.*, 2016 WL 7404559, *5 (W.D. Pa. 2016) (Fischer, J.) (because plaintiff's unfair competition claim under Pennsylvania law was best characterized as "reverse passing off," the claim was the "equivalent" to its copyright infringement claim and preempted by Section 301 of the Copyright Act); *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 322 (S.D.N.Y. 2010) ("[R]everse passing off does not constitute an extra element for preemption purposes because it is essentially a claim for unauthorized use of copyrightable material."). *See also Daley*, 2006 WL 148879 (plaintiff's claim for unfair competition was preempted by the Copyright Act); *Technology Based Solutions, Inc. v. Electronics College Inc.*, 168 F. Supp. 2d 375 (E.D. Pa. 2001) (copyright holders' misappropriation by unfair competition claim was preempted by the Copyright Act because it was really a claim for unauthorized copying).

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Counts II and III of Plaintiff's Complaint be dismissed, with prejudice.

Dated this 6th day of August, 2018.

    Respectfully submitted,

*/s/ Scott D. Cessar*
Scott D. Cessar (Pa. I.D. No. 49639)
scessar@eckertseamans.com
Audrey K. Kwak (Pa. I.D. No. 200527)
akwak@eckertseamans.com

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
U.S. Steel Tower, 44th Floor
600 Grant Street
Pittsburgh, PA 15219
(412) 566-2581 (telephone)
(412) 566-6099 (facsimile)

John F. Cambest (PA ID No. 20134)
jcambest@law-dmc.com

**DODARO MATTA & CAMBEST, P.C.**
1001 Ardmore Blvd., # 100
Pittsburgh, PA 15221
412-243-1600 (Telephone)

*Attorneys for Defendants Moon Area School District and Ronald Ledbetter*

# CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing has been electronically filed via the Court's CM/ECF filing system this 6th day of August, 2018. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*s/ Scott D. Cessar*
Attorney for Defendants

{J2379411.1}