# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA PITTSBURGH DIVISION

| | |
|---|---|
| KEITH F. BELL, Ph.D. : | |
| : | Civil Action No. 2:18-cv-00399-NBF |
| Plaintiff, : | |
| : | |
| v. : | Judge Nora Barry Fischer |
| : | |
| : | |
| MOON AREA SCHOOL DISTRICT : | |
| and RONALD LEDBETTER, : | |
| : | |
| Defendants. : | |

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
## FOR SETTLEMENT AGREEMENT TO BE MADE CONFIDENTIAL

Plaintiff, through counsel, hereby respectfully submits this brief in support of Plaintiff's Motion for Settlement Agreement to be Made Confidential. Defendants do not oppose the relief sought by this Motion.

## SUMMARY OF ARGUMENT

The parties have agreed to the terms of a Settlement Agreement in order to resolve the litigation in this matter. Defendants Moon Area School District ("MASD") and Ronald Ledbetter ("Ledbetter") are a school district and a school district employee, respectively. MASD is bound by the requirements of the Pennsylvania Right-to-Know Law (65 P.S. § 67.101 et seq.) ("RTKL"). The Third Circuit has consistently held that a confidentiality clause agreed to by an agency bound by the RTKL is invalid. The RTKL broadly defines "public records" subject to disclosure but includes exceptions for records deemed confidential by court order. In essence, the parties cannot make their agreement confidential, but the Court can.

Plaintiff is an author who is well-known and respected as an authority in the fields of sports psychology and human performance psychology. A portion of his book, "Winning Isn't Normal" is the subject of the present copyright infringement litigation. Plaintiff has been engaged in, and continues to be engaged in, efforts to prevent the unauthorized copying of his works, including infringement via social media. While the facts of any infringement matter may share similarities with other infringement matters, the facts of each also differ (for example, the sophistication of the infringer, the length of time of the infringement, the manner of infringement, and the settlement/litigation posture of the parties when resolving the issue of infringement). Therefore, the amount of any given settlement agreement may not be relevant to any other. Confidentiality clauses are essential, in order to prevent a potential infringer/defendant from inaccurately assessing the strength of Plaintiff's legal claims or settlement/litigation posture in their specific matter. However, because MASD is bound by the RTKL, Plaintiff and Defendants are unable to enter into a settlement agreement that contains a legal binding confidentiality provision.

In addition to being bound by the constraints of the RTKL, Plaintiff also recognizes that courts need to balance the interest of the litigating parties against the interest of the public generally. Plaintiff has met the requirement of *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir., 1994) that there be good cause for entering an order of confidentiality. "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Id*. In the instant matter, the injury will be the permanent damage to Plaintiff's ability to enforce his copyright and trademark interests, if the settlement amount is not made confidential.

Plaintiff respectfully asks that the Court enter an order making the parties' Settlement Agreement confidential, as permitted by the RTKL.

ARGUMENT

1. Legal Standard

The RTKL requires that public records be made available to the public by local agencies. Section 102 defines a "public record" as "[a] record, including a financial record, of a Commonwealth or local agency that:(1) is not exempt under section 708;(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or(3) is not protected by a privilege." *Id*. The list of RTKL exceptions is extensive and includes settlement agreements resolving investigations into local agencies, as well as court orders in criminal matters. Essentially, the RTKL is superseded by orders of court, enabling courts to analyze the facts of a given case and restrict records when appropriate.

Absent a court order, a confidentiality agreement entered into by parties bound by the RTKL will be held invalid, because an agency "may not contract away the public's right of access to public records because the purpose of access is to keep open the doors of government, to prohibit secrets, to scrutinize the actions of public officials and to make public officials accountable in their use of public funds." *Newspaper Holdings, Inc. v. New Castle Area School Dist.*, 911 A.2d 644, 649, n.11 (Pa. Commw. Ct. 2006). The court noted further that "[a] confidentiality clause contained in a settlement agreement that runs afoul of the RTKL violates public policy and is unenforceable."[1]

---

[1] The Western District of Pennsylvania has held similarly. On February 14, 2019 (Dkt. 47), the Court cited *E.B. v. Woodland Hills Sch. Dist.*, Civ. A. No. 10-0442, 2011 WL 705224, at *1 (W.D. Pa. Feb. 20, 2011) (Lancaster, J.) ("the school district, as a public entity, is subject to laws that require public disclosure of certain documents and records. The school district does not have the power or authority to consent to violate those statutes by private agreement. Nor can the school district enter a private agreement promising not to treat a particular record or document as subject to disclosure…").

Courts often seal records during court proceedings in order to protect the privacy interests of litigants. Indeed, in the present litigation, the Court granted Defendants' unopposed Motion to Seal their Motion to Enforce Settlement Agreement. The Court's February 14, 2019 Order (Dkt 47) referred to the Court's memorandum opinion in *Carnegie Mellon Univ. v. Marvell Tech. Group., Ltd.*, 2013 WL 1336204, at *11 n. 29 (W.D.Pa. 2013) ("[t]his Court will document any evidence it feels necessary to explain its determination, regardless of the parties' positions on confidentiality."). In the same opinion, the Court noted that portions of the transcript were ordered to be sealed, in order to protect an expert's "disclosures concerning activities undertaken pursuant to certain non-disclosure agreements" (*Id.* at Footnote 2). In contrast, the Court cited its denial of a plaintiff's requests to seal her entire case and/or the Court's summary judgment opinion in *Franzi v. UPMC Presbyterian Shadyside*, Civ. Action No. 12-1432-NBF, Docket Nos. 106 and 110 (W.D. Pa. 2016) due to the right of the public to access and understand the rationale for judicial determinations.

In the instant matter, Plaintiff is not asking that the Court seal testimony or a judicial opinion. Rather, Plaintiff is asking that a settlement agreement be made confidential by the court. Plaintiff is mindful that this settlement agreement is not automatically merely the property of the parties, and that, just as there is a public right to review the contents of judicial opinions,

There is generally a public right to review the contents of a Pennsylvania agency's settlement agreements. However, this right is not absolute. The seminal Third Circuit case outlining the standard for review is *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3rd Cir., 1994). In *Pansy,* the court reviewed a newspaper's motion to intervene and thereby access the contents of a settlement agreement which was not filed with the court, where the court had ordered that "the terms of settlement are confidential and the parties hereby are ordered and

4

directed to abide by the order of confidentiality." *Id*. In reviewing the actions of the district court below, the Court of Appeals noted that "[i]n denying the Newspapers' Motion to Reconsider, Vacate or Modify the Order, the district court did not explain why the need for confidentiality outweighed the Newspapers' interest in obtaining access to the Settlement Agreement pursuant to the Pennsylvania Right to Know Act." *Id*. The court then compared protective orders for discovery materials with the confidentiality agreement which resolved the litigation and held "that whether an order of confidentiality is granted at the discovery stage or another stage of litigation, including settlement, good cause must be demonstrated to justify the order." *Id*. at 786. "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citing *Publicker Indus. Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).

The Third Circuit has identified a number of factors district courts may consider, within their discretion, in evaluating whether "good cause" exists, including: 1) whether disclosure [would] violate any privacy interests; 2) whether the information [was] being sought for a legitimate purpose or for an improper purpose; 3) whether disclosure of the information [would] cause a party embarrassment; 4) whether confidentiality [was] being sought over information important to public health and safety; 5) whether the sharing of information among litigants [would] promote fairness and efficiency; 6) whether a party benefitting from the order of confidentiality [was] a public entity or official; and 7) whether the case involves issues important to the public. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 787-791).

In comparing these factors to the present litigation and the question of whether to order that the parties' Settlement Agreement be made confidential, we can quickly dispose of factors 3, 4, 5, and 6. Plaintiff is not seeking to prevent embarrassment to either party (factor 3), the information does not relate to public health and safety (factor 4). The information to be shared would not promote fairness and efficiency (factor 5), as the interest of a future infringer in potentially limiting its financial exposure does not outweigh the property rights of an author who has the legal right to benefit from his work, and who has been granted copyright and trademark rights by the Federal government in order to do so. The party benefiting from an order of confidentiality is Plaintiff, who is not a public entity or official (factor 6).

Plaintiff addresses the remaining factors in turn:

Factor 1 (whether disclosure [would] violate any privacy interests): As stated in the Summary above, Plaintiff has expended much time and energy seeking to stop and prevent the infringement of his copyright and trademark rights. An infringer has no right to privacy, while Plaintiff certainly has the right to keep private the details of his business affairs. If the terms of the Settlement Agreement are public, this limits Plaintiff's right to negotiate equitable settlements with future infringers. Specifically, the unique facts of Plaintiff's settlement posture in this case (which led to a very low settlement amount being agreed to, from his perspective) would not translate to another infringement case, even if the facts of the infringement are similar. Each and every future infringer would have the ability to use the Settlement Agreement – in particular, the amount of the settlement - in arguments to Plaintiff's counsel, to a judge, and to a jury, to extract as low a settlement amount as possible. This essentially would deprive Plaintiff of his property rights in his creative work, and would remove his ability to conduct his business, which includes negotiating licenses for the use of the work. Specifically, a potential licensee

6

could see the settlement amount in the present case and decide that it can financially benefit from infringing rather than paying for a license, incorrectly concluding that the dollar figure specified in the parties' Settlement Agreement in the present case is what Plaintiff would accept in future cases. Failing to protect Plaintiff's privacy would cause him foreseeable financial loss.

In *Glenmede Trust Co. (supra)*, the court denied plaintiffs' request to seal records, where plaintiffs raised general concerns of harm to reputations and to their relationships with clients. This contrasts with the facts of the case at bar, in which Plaintiff continues to enforce his copyright rights, an effort that sometimes includes litigation. The litigation itself has resulted in publication of articles regarding the settlement of Plaintiff's cases. These have included broadly available publications such as Law360 (see the January 2, 2018 article, "Sports Psychologist, Football Coach End Retweet IP Fight" at https://www.law360.com/articles/998144/sports-psychologist-football-coach-end-retweet-ip-fight (accessed on February 26, 2019)). If the settlement amount in the present matter is not made confidential, it is both foreseeable and likely that a future infringer would be able to see the settlement amount, resulting in the harms identified in the above paragraph.

Factor 2 (whether the information [was] being sought for a legitimate purpose or for an improper purpose): There is no legitimate public purpose in making the Settlement Agreement public. The litigation itself is already publicly available, and the public can see the allegations made by the Plaintiff, the defenses raised by the Defendants, and they will be able to see that the case was resolved without further litigation. To the extent that the public has an interest in seeing the details of the parties' settlement, that interest is outweighed by Plaintiff's privacy interests, as stated above.

Factor 7 (whether the case involves issues important to the public): As stated above, the litigation itself is available to the public. While respect for intellectual property is important, it is not as important as issues of public health or welfare, the safety of students, issues of hiring/firing of employees, or the misconduct of government officials. To the extent that the public has an interest in seeing the details of the parties' settlement, that interest is outweighed by Plaintiff's privacy interests, as stated above.

## CONCLUSION

In order to prevail on a request that settlement agreement be made confidential, a party cannot make an overbroad request, or to make a request without defining a harm to be avoided. The Third Circuit has established a balancing test, and Plaintiff has clearly articulated his reasons for requesting that the Court grant his request.

Plaintiff therefore respectfully request that the Honorable Court enter an order granting Plaintiff's Motion for Settlement Agreement to be Made Confidential. As noted above, Defendants do not oppose this request.

Dated this 1st day of March, 2019.

                                                Respectfully submitted,

                                                */s/ Joshua D. Waterston*
                                                Joshua D. Waterston (Pa. I.D. No. 85346)
                                                josh.waterston@elman.com

                                                Elman Technology Law, P.C.
                                                12 Veterans Square
                                                Media, PA 19063
                                                (610) 892-9942 (telephone)

                                                *Attorney for Plaintiff Dr. Keith Bell*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically filed via the Court's CM/ECF filing system this 1st day of March, 2019. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*s/ Joshua D. Waterston*
Attorney for Plaintiff